# ROCKINGHAM,

## JANUARY TERM, A. D. 1846.

### VARRELL *v.* WENDELL.

A bequest of bank stock for the life of the legatee, with power of sale on certain conditions, and to be apportioned to the relations of the testator according to the discretion of the legatee, to be by them enjoyed after her decease, enures, in the absence of an appointment, to the benefit of those of the testator's relations who would be entitled under the statute of distributions.

Varrell *v.* Wendell.

If a power be given in a will to "apportion to the relations" of the deceased, the appointment must be confined to the next of kin according to the statute of distributions; especially if, by using the word "relations" in that restricted sense in another part of the will, the testator appears so to have intended it.

If a power of appointment has, through mistake, been exercised by the donee deceased, in favor of some who are, and some who are not, the legitimate objects, it shall not be taken to be good *pro tanto*, in a case in which, in the absence of an appointment, the fund would be distributed among those persons who are the proper objects of the power; but is wholly void.

Personal property bequeathed to one for life, with power to appoint, at the decease of the legatee without executing the power, belongs to the administrator of the testator.

IN EQUITY. William Gardner died on the 27th day of April, 1833, having devised the whole of his real and personal property to Sarah Gardner, his wife, during her life, except his farm in Wendell. "No part of the bank stock is to be disposed of, unless her comfort should require it, but it is to be apportioned to my relations according to her discretion, to be enjoyed by them after her decease."

Sarah Gardner, the wife, died on the 11th day of August, 1841, having made her will, in which she, reciting the power conferred upon her by the will of William Gardner, to apportion the bank stock remaining unsold among his relatives, for the purpose of carrying the same into execution, gives, bequeaths and apportions the same in various shares among the persons therein named, who, at the time of making her will, would have been the relatives of William Gardner in various degrees of consanguinity, had he been then living. James W. Emery was appointed executor, who afterwards resigning the trust, letters of administration, with the will annexed, were granted to Albert R. Hatch.

Henry F. French was, upon the decease of Sarah Gardner, appointed administrator *de bonis non cum testamento,*

Varrell *v.* Wendell.

&c., of William Gardner, and, as such, claimed the bank shares named in the will of each of those parties that had not been sold by Sarah in her lifetime.

The plaintiffs, thirty-three in number, were the persons in whose favor Sarah Gardner had by her will assumed to exercise the power of appointment or apportionment conferred by the will of her husband.

The bill states the foregoing facts; describes the particular degrees of relationship of each of the plaintiffs with William Gardner deceased; states that Hatch, the administrator of Sarah, ought to have possession of the bank stock, for the purpose of distribution among the plaintiffs, as the relatives of William Gardner, according to the appointment of Sarah; and prays that a decree may be made requiring French, the administrator, to deliver over and assign to Hatch, the representative of Sarah Gardner, all the bank stock received by him, together with the accruing dividends, and that the same may be distributed to the plaintiffs, according to the will and appointment of Sarah Gardner.

The two administrators, and sundry persons claiming under the administration of William Gardner's estate, are made parties to the suit.

It appeared that there were living, of the kindred of William Gardner, one brother, Christopher, and seven nephews and nieces, the children of deceased brothers; and that these were all living at the death of Sarah Gardner: that Christopher Gardner has since deceased, leaving children, and the defendants by their answer insist that those parties alone are entitled, under the will of William Gardner, to the bank stock.

By the will of William Gardner, the farm in Portsmouth was devised to Andrew Gardner, subject to certain charges and provisions in favor of other persons; "to revert," however, to the testator's "relations" in the event of the death of Andrew "without issue."

The cause was brought to a hearing upon the bill and answers.

*Emery*, for the plaintiff.

*Freeman*, for the defendant.

GILCHRIST, J.    The will of William Gardner gave the bank stock to Sarah, his wife, to hold for the term of her life, with power to dispose of it during her life, if her comfort should require it, and to be apportioned by her among his relations, to be enjoyed by them after her decease.    With respect to that portion of the stock which she did not attempt to dispose of in pursuance of the power she derived by implication from the will, of providing by such means for her comfort, the question arises, what was the power derived by her from the will, and whether her own will, apportioning the stock among various persons that were of kin to the testator in different degrees, and excluding some who were his next of kin, was a valid execution of the power.

In *Spring* v. *Biles*, 1 T. R. 435, note, the testator had given power to the wife, by her last will, to dispose of the property to and among such of the testator's relations, living at his decease, in such parts, shares and proportions as the wife should think proper.    The power was, under the circumstances, held to have been well executed.    "If she had died without an appointment," Lord *Mansfield* said, "it would have been a trust, and it would have devolved on the court, who must have been governed by the statute of distributions."

In *Harding* v. *Glynn*, 1 Atk. 469, where it was uncertain what persons were meant by relations, it was decreed that the property should be divided among such as were next of kin.

Varrell *v.* Wendell.

In *Hands* v. *Hands*, cited in the argument of *Spring* v. *Biles*, where the will of the testator was, that his wife should, at her decease, give unto and amongst his relations what should remain of what he had thereby given and bequeathed unto her; it was held that the next of kin to the testator were, on his death, entitled to vested interests in proportions contingent upon the exercise of the power of appointment.

In a note to the case of *Harding* v. *Glynn*, in Atkyns, is a list of cases in which it has been held that the words "relations" or "kindred," in a will, without any specification of what relations or kindred, denoted such only as were within the statute of distributions ; although the shares and proportions of such must be regulated according to the intent and construction of the will under which they claim.

Such being the class of persons entitled, on the failure of the appointment, to take under a general bequest to the testator's relations, it would seem to follow that they are also the class to which the benefits of the appointment are limited ; and that a power of appointment, in favor of. the relations of the testator, should not authorize an appointment to any others than those who would be entitled, as such relations, in the absence of such a power, or in default of its due and valid execution.

It however seems to be settled that a donee of a power may, in its exercise, go beyond the limits which the court adopts for its own guidance, and, under a general power of selecting amongst relations, step beyond the circle embraced by the statute of distributions. Sugd. Pow. 262.

Yet a power to appoint amongst the relations, without that of selection, is held not to authorize a departure from that limit, and restrains the donee to a distribution among the next of kin, and their representatives, according to the statute. Ib. *Pope* v. *Whitcombe*, 3 Mer. 689 ; Sugd. Pow., ch. 14, sec. 2.

To this point the case of *Hands* v. *Hands*, before cited, is a strong authority, since it establishes in the next of kin a vested estate, in proportions to be varied by the appointment.

In the case under consideration, the stocks were "to be apportioned to his relations according to her discretion, to be enjoyed by them after her decease," and the power falls very clearly within the restricted class, according to the distinctions pointed out by the author of the treatise which has been cited. It is a power to appoint amongst the relations who are next of kin, and not the power of selecting from among all the relations.

Such restricted meaning to the word relations, seems to have been given by the testator himself; since, in the devise of the Portsmouth farm, he provided that, upon failure of the issue of Andrew Gardner, the estate should go to the testator's relations. By these he must, without any reasonable doubt, have intended his next of kin, according to the statute.

Having thus arrived at the conclusion that the testatrix was limited, in the exercise of the power, to an apportionment of the fund among such as were of nearest kindred to the testator, according to the statute of distributions, a question arises, whether any regard should be had to the action of Mrs. Gardner in giving a part of the property to those persons. In short, should her will, in assigning to certain of those persons a portion of the stock, be regarded as an execution of the power *pro tanto*, and, if so, final as to those persons ?

Her appointment was, as an execution of the power in the extent in which it was so intended, invalid. Her act was based upon a misapprehension of her rights and the rights of others in relation to the property, and she proceeded upon the belief that she might select the objects of her preference from a much wider range than that to which she was legally confined. So that, although it

Varrell *v.* Wendell.

appears from her acts, what shares she would, in the discretion confided to her, have assigned to the persons in question, as compared with those with whom she did in fact put them in competition, it by no means follows that, in the narrower competition of claims to which she should have restricted her choice, she would not have assigned to those individuals very different portions. Indeed it is most probable, and is to be presumed, from the plain aspect of the case, that the misapprehension under which she acted very materially affected her conduct with respect to these individuals, and that they ought not to be bound by a judgment which proceeded so entirely upon a mistake in a very material matter.

Sir Edward *Sugden* declares, 2 Sugden on Powers 69–71, that there is great difficulty with regard to those cases in which a power of appointment is attempted to be executed in favor of persons, some of whom are and some are not the proper objects. Some of the cases cited and commented upon by him tend to show that the appointment is wholly void; while others establish the appointment, so far as it has been made in favor of the legitimate objects, where the excess is capable of being ascertained. Among those cases no one much resembles that which is under consideration, or propounds a principle that could probably be applied without injustice to its solution.

It is not to be presumed that, if the donee of the power in the case before us had been made aware of the mistake she had committed, and had undertaken to correct it, she would, without disturbing the shares that she had apportioned to the next of kin whom she had selected, have simply divided the ill-appointed residue in equal shares among all the next of kin. The court did that in *Sadler* v. *Pratt*, 5 Simons 632, but there the result was perfect equality among the appointees, and precisely the same that it would have been if the appointment had been entirely vacated.

A very different result would follow here, and in cases like the present there is no safety or propriety in presuming what the testatrix would have done had she been aware of all the circumstances. The fact that is practically of most importance is, that she did not execute the power. To say that she partially executed it, simply because, through mere accident and in total ignorance of what she was doing, she happened to assign a portion of the fund to one or more of the class capable of taking, is a misuse of terms.

This is not one of those cases in which, in default of an appointment, the fund goes over, and is wholly lost to all of the number of the possible appointees. In such a case there would be a reason that does not here exist, for upholding the appointment to the extent to which it had been made in favor of the proper objects. How such a case would be decided, it is not necessary to inquire.

But here the fund does not, by the terms of the devise, go over in default of the appointment, but simply falls back, in equal proportions, to the same parties who would otherwise take it, in proportions depending upon the discretion of the donee.

The conclusion, therefore, is, that the power of appointment has wholly failed of being executed, the attempted appointment being null and void. The court cannot execute the power. The fund must, therefore, go as if the donee had not attempted to execute it, namely, among the next of kin. *Attorney General* v. *Doyley*, 7 Ves. 58 ; *Reade* v. *Reade*, 5 Ves. 744.

The bill must be dismissed. The fund in question is no part of the estate of Mrs. Gardner, but belongs to that of Col. William Gardner, and is rightfully in the hands of his administrator for distribution, according to the principles declared. The application of those principles will not, it would seem, be difficult under the circumstances ; but it is no part of the purpose of this suit to settle those matters by a decree. *Bill dismissed.*