EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Administrator *cum testamento annexo* of the Estate of Mabel Bayard Bird, deceased, and Trustee under the Last Will and Testament of the said Mabel Bayard Bird, deceased.

*vs.*

JEAN KANE FOULKE, ELIZABETH KANE RHEIN, JEAN KANE FOULKE and JEAN KANE FOULKE DUPONT, Executrices of the Will of FLORENCE BAYARD KANE, deceased, SARAH WILLIAMS KANE and PROVIDENT TRUST COMPANY OF PHILADELPHIA, Trustees of the residuary estate under the Will of JAMES A. BAYARD KANE, MARGARET PAUL KANE, residuary legatee under the Will of JOHN KENT KANE, MABEL KANE FOX, FLORENCE KANE FOSKETT, JOHN KENT KANE, JR., FRANK PAUL KANE and BRADEN BAYARD KANE.

*New Castle, January 10, 1945.*

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for complainant.

*James R. Morford* of the firm of Marvel & Morford, and *Thomas Cooch* for Mabel Kane Fox, Florence Kane Foskett, John Kent Kane, Jr., Frank Paul Kane, and Braden Bayard Kane.

*Lighton S. Dorsey* and *John Hemphill,* of Philadelphia, Pa., for Jean Kane Foulke, and Jean Kane Foulke duPont, executrices of the will of Florence Bayard Kane, deceased.

HARRINGTON, Chancellor: The question to be determined is the validity and effect of the exercise of the power of appointment by Mabel Bayard Bird, given her by the will of her father, James Ashton Bayard.

James Ashton Bayard died in 1880, and by his will dated April 14th, 1871, and a codicil thereto, dated May —, 1874, he gave and devised to his son, Thomas F. Bayard, a one-third part of the residue of his real and personal estate, in trust, for the sole and separate use of Mabel Bayard Kane, who later became the wife of Levi C. Bird, for her natural life. By the Third Item of that instrument, the testator also provided:

"* * * at her decease I give and bequeath the said property so mentioned in this Item to and among her children in such shares as she may by any last Will * * * appoint * * *."

The codicil is unimportant, and its provisions will not be set out.

Mabel Bayard Bird died November 28th, 1897, and by her will expressly assumed to exercise the power of appointment given her by her father's will. She left to survive her five children, Jean Kane Foulke, Florence Bay-

ard Kane, James A. Bayard Kane, John Kent Kane and Elizabeth Kane, who first married one Norris, and later became the wife of Dr. John H. W. Rhein.

By the will of Mabel Bayard Bird, dated July 3rd, 1889, and a codicil thereto dated April 10th, 1895, she bequeathed and devised all of her own individual property, and appointed the property over which she had the power, to her brother, Thomas F. Bayard, in trust. In that instrument, she first recited that, though she wished to provide equitably for each of her children, she especially desired that her two unmarried daughters, Florence Bayard Kane and Elizabeth Kane, "while they continue unmarried, should receive an income from my (her) estate sufficient to provide and keep for them a home, and in the event of the marriage of either * * * that the daughter remaining unmarried should receive sufficient income to secure her independence." She then directed her trustee (1) to pay from the income arising from the trust fund to her two daughters, "Florence Bayard Kane and Elizabeth Kane, each the sum of One Thousand Dollars yearly, * * * so long as they continue to live together and both remain unmarried—and the residue of all the income from my estate shall be divided by the said Trustee equally among my other three children—viz—Jean Kane Foulke (wife of George Foulke) James Ashton Bayard Kane, and John Kent Kane—the issue of any deceased child to take the same share their or its parent would have taken if living—"; (2) "in the event of the marriage or death of either of my said daughters Florence Bayard Kane or Elizabeth Kane the sum of Twelve Hundred Dollars income shall then be annually paid by the said Trustee unto the daughter who shall remain unmarried—and the residue of the income of my estate shall be equally divided among all my other children, the issue of any deceased Child to take the same share their or its parent would have taken if living—" (3) " * * * in the event of the marriage or death of both of my said daughters Florence Bayard Kane and Elizabeth Kane, or of their ceasing to live together while both remain

unmarried, then I direct that the entire income of my estate shall be equally divided among all my children share and share alike, and in the event of the death of any one or more of my children leaving a child or children or the issue then living of said child or children, such child or children shall receive such portion of the income and share of my estate as his, her or their parent would have received if living"; and (4) "* * * in the event of the Marriage or death of my said daughters, Florence Bayard Kane and Elizabeth Kane, after the death of both Levi C. Bird and Susan Faussett, then the trust hereby created shall terminate * * and the said Trustee shall divide the whole corpus of my Estate equally among all my Children then living, or the issue then living of such of my children as may then be dead, 'per stirpes' and not 'per capita'."

Levi C. Bird, the husband of Mabel Bayard Bird, the testatrix, and Susan Faussett were to receive certain bequests during their lives, the former on his birthday, and the latter at Christmas, both predeceased Florence Bayard Kane.

The bill alleges, and the answer filed admits, that Florence Bayard Kane and Elizabeth Kane Rhein were both living at the death of James Ashton Bayard. While not alleged in the bill, it is conceded that the other children of Mabel Bayard Bird were also in being at the death of their grandfather.

Florence Bayard Kane died May 14th, 1943, unmarried and without issue, and Jean Kane Foulke and Jean Kane Foulke duPont are the executrices of her will.

James A. Bayard Kane died August 31st, 1931 and left to survive him one daughter, Mabel Kane Fox. His estate has been closed, and Sarah Williams Kane and Provident Trust Company of Philadelphia are the trustees of the residue.

John Kent Kane died November 14th, 1937, leaving to

survive him four children, Florence Kane Foskett, John Kent Kane, Jr., Frank Paul Kane and Braden Bayard Kane. His estate has also been closed, and Margaret Paul Kane is the residuary legatee under his will.

Thomas F. Bayard, the executor and trustee under the will of Mabel Bayard Bird, renounced the appointment in both capacities, and Equitable Trust Company, the complainant, was appointed administrator *c.t.a.* of her estate by the Register of Wills for New Castle County. The complainant also became successor trustee by designation of the children of the said Mabel Bayard Bird, pursuant to the provisions of the codicil to her will.

The marriage of Elizabeth Kane Rhein and the subsequent death of Florence Bayard Kane on May 14th, 1943 terminated the trust; and the rights of the various parties must be determined as of that date. That is conceded by all parties who appeared and argued the case. The complainant, as trustee, at that time had in hand $118,429.73, of which $33,834.91 was received from Thomas F. Bayard, as trustee of Mabel Bayard Bird under the will of James Ashton Bayard, deceased; and, as administrator *c.t.a.* and trustee, it seeks instructions with respect to the proper distribution of the funds in hand.

The intent of James Ashton Bayard, as shown by his will, is the controlling factor in determining the scope of the power given Mabel Bayard Bird. *Harker v. Reilly*, 4 *Del. Ch.* 72; *Wilmington Trust Co. v. Wilmington Trust Co.*, 21 *Del.Ch.* 102, 180 *A.* 597; *Wilmington Trust Co. v. Wilmington Trust Co.*, 25 *Del.Ch.* 121, 15 *A.2d* 153; 49 *C.J.* 1266. In effect, the appointment was in trust during the life of her daughter, Florence Bayard Kane, or so long as she remained unmarried, during which time she was to receive a specified income from the entire trust fund; the excess income, if any, was to be paid to the donee's other children and to the issue of deceased children. The major life provision for Elizabeth

Kane Rhein never took effect because of her marriage prior to the death of her mother.

In exercising the power, the donee could have given absolute and unqualified rights to her children "in such shares" as she might appoint, but the right to appoint lesser interests to objects of the power was neither expressly nor impliedly prohibited, and was lawful. *Wilmington Trust Co. v. Wilmington Trust Co., supra;* 1 *Sugden on Powers,* * *p.* 491. The power was special only as to the persons among whom the fund could be appointed, and not as to the quantum of their interests; and the unrestricted power to appoint absolute interests includes the right to appoint lesser interests. *Id.; Jebb v. Tugwell,* 44 *Eng. Repr.* 258; *Thompson on Wills,* (2d Ed.) 493. When the exercise of a power is merely restricted to certain persons, the reasonable inference is that the nature of the interest to be appointed is left to the donee's discretion. The testator's use of the words "in such shares" does not mean that only absolute and immediate rights could be appointed among the objects of the power. *Lawrence's Estate,* 136 *Pa.* 354, 20 *A.* 521, 11 *L.R.A.* 85, 20 *Am.St.Rep.* 925; 41 *Amer.Jur.* 854. In *Wilmington Trust Company v. Wilmington Trust Company, supra,* this court reached the same conclusion when the authorized appointment was "in such proportions" as the donee might designate. In *Matter of Kennedy's Will,* 279 *N.Y.* 255, 18 *N.E.2d* 146, the power was couched in somewhat different language, and was regarded as wholly special; and in so far as the broad general statements of the court might be inconsistent with the conclusion in this case, they were not followed in the *Wilmington Trust Company* cases. Nor was the donee compelled to appoint equal rights in the income to her children; but the attempted appointment of a portion of it, and ultimately of a portion of the capital to the issue of deceased children, was void.

In the absence of something to show a contrary intent, the word "children" in the donor's will creating the power,

must be given its usual and ordinary meaning, and, under such circumstances, a power to appoint to children does not include the right to appoint to their issue. 2 *Sugden on Powers,* \*p. 253; *Jarnagin v. Conway.* 21 *Tenn.* 50.

It does not appear how the excess income from the Bayard fund, if any, was distributed during the life of Florence Bayard Kane, and no possible relief, with respect thereto, is involved in this proceeding.

The next contention relates to the distribution of the corpus of the Bayard fund in the hands of the trustee. Mabel Bayard Bird directed in her will, that at the termination of the trust, the corpus should be equally divided "among all my (her) children then living or the issue then living of such of my children as may then be dead *'per stirpes'* and not *'per capita'*." Of her five children, only Jean Kane Foulke and Elizabeth Kane Rhein survived Florence Bayard Kane. The important question, therefore, is whether the appointment was valid as to them, though it was clearly invalid as to the children of deceased children.

Under the old general rule, when the donee of a power of appointment includes persons who are not objects of the donor's bounty, the excess appointment is alone invalid. *Sadler v. Pratt,* 5 *Sim.* 632, 58 *Eng.Repr.* 476; *In re Perkins,* [1893] 1 *Ch.* 283; 2 *Sug. on Powers,* 56, \*p. 62; 1 *Simes Fut. Int.,* § 274; 41 *Amer. Jur.* 861; 49 *C.J.* 1300; see also *Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del.Ch.* 188, 186 *A.* 903. In other words, "\* \* \* ordinarily, if the appointment is in part within the terms of the power and in part in excess of them, it will be void only for the excess." 1 *Simes Fut. Int.,* § 274; *Sadler v. Pratt, supra.* In such cases, the boundaries between the excess and the proper execution of the power are regarded as precise and apparent, so that the shares of the legitimate objects can be readily ascertained. *In re Perkins, supra; Alexander v. Alexander,* 28 *Eng.Repr.* 408; 121 *A.L.R.* 1227. Moreover, when there is a complete execution of a power and some unauthorized con-

dition or limitation, primarily for the benefit of non objects, is added by the donee, that part is void, but the appointment is otherwise good. *In re Holland,* [1914] 2 *Ch.* 595; *Alexander v. Alexander, Supra; In re Perkins, supra;* 21 *R.C.L.* 431.

Under the old rule, when "* * * a part of the fund is ill appointed, it goes according to its original destination in the event of there being no appointment. And consequently a person to whom a specific share is well appointed shall not be excluded from taking any of the unappointed shares." *Sugden on Powers,* 202, *p. 220.

If these general principles be applied, the two surviving daughters of Mabel Bayard Bird would together be entitled to more than one-half of the entire appointive fund. Each of them would get not only their shares under the appointment, but under the default provision of James Ashton Bayard's will, would also take one-fifth of the part illegally appointed. It is contended that the application of this rule would cause an inequitable result; that if the appointment of the corpus of the fund is void in part, the donee's real intent would be more nearly carried out by holding it entirely void, and by distributing the whole fund under the default provision of James Ashton Bayard's will.

The rule adopted by the *Restatement of the Law of Property (Future Interests)* is largely relied on. *Section* 362, in part, states:

"Where one part of an appointment is ineffective but another part would, if standing alone, be effective, such other part is given effect unless

"(a) the two parts are so mingled that it is impossible to fix the line of division between them, or

"(b) the donee's scheme of disposition is more closely approximated by allowing both parts to pass in default of appointment than by treating as valid the latter part of the appointment and allowing only the property covered by the former part to pass in default.

\* \* \* \* \* \*

"b. Rationale. Whenever part of a dispositive scheme fails, and it is possible to separate that part from the balance of the disposition, there always arises the question whether that part was so essential to the whole that its failure causes the failure of the remaining parts, of themselves valid. The answer to this question depends upon whether the general dispositive scheme disclosed in the instrument is more nearly approximated by treating as effective the remaining part or by allowing the property to pass to those persons who would receive it if no disposition had been attempted; for it is inferred that the person making the disposition desires the remaining part to stand only if thereby the purposes of the original disposition are advanced. When the partial invalidity so distorts the dispositive scheme that it is inferable that the person making the disposition would not prefer the balance to stand alone, then the entire disposition fails. ·

"This general rule is applicable in cases where the donee of a power has made an appointment which is partially ineffective. If the general scheme of appointment shown in 'the donee's instrument would be better carried out by allowing the property to pass in default of appointment, the entire appointment fails and the property passes in default."

As we have seen, there is little, if any, authority for that rule in England, but it was recognized by some courts and text books in this country before the *Restatement* was published. While less specific, Simes recognizes it in principle by the statement that "a case may arise where to strike out the void portion of the appointment so completely defeats the donee's intent as to render the entire appointment void." 1 *Simes Fut. Int.*, § 274. See also *Old Colony Trust Co. v. Richardson*, 297 *Mass.* 147, 7 *N.E.2d* 432, 121 *A.L.R.* 1218; *Varrell v. Wendell.* 20 *N.H.* 431; *Graham v. Whitridge*, 99 *Md.* 428, 57 *A.* 609, 58 *A.* 36, 66 *L.R.A.* 408; *Parker v. MacBryde*, (4 *Cir.*) 132 *F.2d* 932; *Hamilton v. Royse*, 2 *Sch. & Lef.* 315; 121 *A.L.R.* 1227; 49 *C.J.* 1300.

The will of James Ashton Bayard provided that if Mabel Bayard Bird failed to exercise the power given her, the corpus of the fund shall be held "for all and every her child and children if more than one in equal shares and the issue of any child who may have died in her lifetime to take the same as its parent would have taken if living * * *." That

provision would include all of the donee's children living at her death, and the issue of any who might have died in her lifetime, the latter to take the same shares their parents would have taken if living. All of her children survived her, but the attempted appointment was quite similar in its real intent. It provided that at the termination of the trust, the corpus should be divided equally among all of the donee's children, then living, or the issue then living of such as might be dead, "per stirpes" and not "per capita". It, therefore, seems proper to apply the *Restatement* rule to this case.

Neither *Wilmington Trust Company v. Wilmington Trust Company*, 21 *Del.Ch.* 188, 186 *A.* 903, nor *Equitable Trust Company v. Snader*, 17 *Del.Ch.* 203, 151 *A.* 712; *Id.*, 17 *Del.Ch.* 308, 154 *A.* 15, is inconsistent with this conclusion. There might be some general statements in the first case that may be relied on in support of the old English rule, but the facts were very different.

The equitable interests appointed during the life of Florence Bayard Kane were also void in part, but the *Restatement* rule is not applicable.

The donee, in attempting to exercise the power given her, recited that, while she wished to provide for all of her children equitably, she especially desired to provide for her unmarried daughters so long as they should remain single. Apparently that was her primary intent. Moreover, the ultimate annual income of $1200 provided for was to be paid from the entire trust fund, and not from the Bayard fund ($33,834.91) alone. Under the circumstances; the inference is not justified that the donee of the power would not have exercised it in favor of any of her children had she known that no part of the excess annual income from the Bayard fund, if any, could be appointed to the issue of deceased children. The probable total income from that fund during the life of Florence Bayard Kane, and the portion she re-

ceived therefrom, is emphasized; but, in view of the clear intent of the donee of the power, that is unimportant.

Applying the above principles, the corpus of the Bayard fund should be equally divided among Jean Kane Foulke, Elizabeth Kane Rhein, the executrices of Florence Bayard Kane, the estate of·James A. Bayard Kane, deceased, and the estate of John Kent Kane, deceased.

Ordinarily, moneys due the estates of deceased persons should be paid to their personal representatives, but when their estates have been closed and balances turned over to the proper parties, there is usually no good reason why the payment should not be made directly to them. *Huxley v. Security Trust Co.*, 27 *Del.Ch.* 206, 33 *A.2d* 679. The amount due the estate of James A. Bayard Kane can, therefore, be paid to Sarah Williams Kane and Provident Trust Company of Philadelphia, the trustees of his residuary estate, and the amount due the estate of John Kent Kane can likewise be paid to Margaret Paul Kane, his residuary legatee.

A decree will be entered in accordance with this opinion.