**In re Alice duPont BUCK TRUST.**

Court of Chancery of Delaware,
New Castle.

Jan. 22, 1973.

Joseph H. Geoghegan, of Potter, Anderson & Corroon, Wilmington, for William E. Haible.

David T. Dana, III, of Richards, Layton & Finger, Wilmington, for Bank of Delaware, Guardian ad Litem (for Thomas C. Haible, John R. Haible and Charles C. Haible), and for Paul duPont Haible and William W. Haible.

DUFFY, Chancellor:

The pertinent facts are stated in an opinion of this Court dated April 21, 1971 and reported at Del.Ch., 277 A.2d 717 (sub nom., In re Buck Trust). In brief, it was there held that the Testatrix intended to exercise in her will any power of appointment she had at the time of her death, including a power of appointment given to her by the will of her mother, Alice duPont Buck (after Mrs. Haible had executed her own will but before she died).

The parties went to trial on the issue of whether the Testatrix violated the special limitations on the power by appointing the property to an inter-vivos trust and thus making it subject to creditor claims. This is the decision after post-trial briefing.

### A.

The pertinent language in Mrs. Haible's will reads:

"ITEM V. I devise and bequeath all the rest, residue and remainder of my estate, together with any property over which I may have the right to exercise any power or powers of appointment, to Bank of Delaware, a corporation of the State of Delaware, or to its successors, as Trustee under a certain revocable living trust agreement entered into by me with Equitable Trust Company (now Bank of Delaware), a corporation of the State of Delaware, on the 23d day of January, 1940, as amended from time to time, to be merged with, held, administered and disposed of as a part of the trust estate held thereunder and not as a separate testamentary trust.

ITEM VI. As authorized under . . . a Revocable Living Trust Agreement entered into by me with Equitable Trust Company . . . on the 23d day of January, 1940 . . . *if the assets of my estate are insufficient* for the payment of funeral expenses, debts, administration expenses, including Executors' commissions, estate, inheritance, transfer or other succession or death taxes and all other proper charges against my estate, and for the further satisfaction of all bequests of tangible personal property, whether specific or general, all other specific bequests and devises, and all pecuniary bequests, *then my Executors shall require the Trustee of the trust under the said agreement to contribute such an amount or amounts as are needed,* in addition to the assets of my estate, to pay all such expenses, debts, commissions, taxes and charges and to satisfy all such bequests and devises. I direct that all estate, inheritance, transfer or other succession or death taxes which shall become payable upon or with respect to any property or any interest in property which is included as part of my gross estate for the determination of any such taxes shall be paid by my Executors out of the amount so contributed by the said Trustee *and* out of that portion of my property which would otherwise be disposed of under Item V hereof, in the same manner as an expense of administration, and shall not be prorated or charged against any other property so included as part of my gross estate." (Emphasis added.)

The Testatrix thus exercised the special power by appointing the property to the revocable living trust referred to in Item VI.[1] The guardian ad litem argues that the appointment was invalid because in so doing the Testatrix made the property a part of her own estate and subjected it to creditor and tax claims. And this, says the

guardian, exceeded the power given by Mrs. Buck which specifically states that:

" . . . such child shall not appoint such share to or for the benefit of such child, such child's estate, such child's creditors, or the creditors of such child's estate, and provided such child shall appoint such share to or for the benefit of one or more persons or other donees within a class which does not include any others than such child's spouse, descendants of mine, other than such child . . . . "

### B.

If the donee of a special power appoints a beneficial interest to a non-object of the power, the appointment is ineffective. Restatement, Property § 351. The granting of a power, of course, does not give the donee any interest or estate in the property, 72 C.J.S. Powers § 31, and property which is disposed of through exercise of a power of appointment does not become part of the estate of the donee of the power. Equitable Trust Company v. Snader, 17 Del.Ch. 203, 151 A. 712 (1930).

The appointment to Mrs. Haible's revocable living trust was, on its face, within the special limitations on the power given to her by Mrs. Buck. I say this because Mrs. Haible directed in Item V of her will that the appointive property be " . . . merged with, held, administered and disposed of as a part of the trust estate held thereunder . . . " and the beneficiaries of that trust are permissible objects of the special power (i. e., her husband and children).

The difficulty, however, is that Mrs. Haible also directed her Executors to require the Trustee of the inter-vivos trust to contribute " . . . such an amount or amounts as are needed [by the Executors], in addition to the assets of my [probate] estate, to pay all such expenses, debts,

---

1. A complete and superseding amendment to the 1940 agreement was made on March 12, 1965 and was in effect when Mrs. Haible died.

commissions, taxes and charges and to satisfy all such bequests and devises."

While the appointive property did not legally become a part of Mrs. Haible's probate estate, this directive subjects it to obligations of the estate, including debts of the decedent, and/or of the estate, administrative expenses, commissions, taxes, and so on. Mrs. Haible so directed in so many words. The trial record shows that this mandate will, in fact, become operative if the appointed property goes into the trust: the probate estate is valued at about $204,000 (including tangibles) and estate expenses are about the same amount, without counting additional Massachusetts inheritance taxes which are estimated to be $80,000;[2] additional attorney fees and executor's commission (in undetermined amounts) must also be paid and there is the "possibility" of additional Federal estate taxes (payments of $159,011 and $24,085 have been made thus far to the United States and Massachusetts, respectively). The exact amount required to meet these obligations is uncertain but the only reasonable conclusion from the evidence is that a substantial contribution will have to be made by the Trustee out of trust assets. And so, in fact, the appointive property will necessarily be used for impermissible purposes.

William E. Haible makes two arguments to support his contention that the appointment is valid.

First, he says that the trial did not produce any evidence which justifies changing the Court's opinion that Mrs. Haible intended to exercise the special limited power. And that is so. But the intent of the donor of the power is the controlling factor in determining the scope of the power. Equitable Trust Co. v. Foulke, 28 Del.Ch. 238, 40 A.2d 713 (1945). The property was Mrs. Buck's, she had the right to fix the limitations under which it was given. And giving effect to Mrs. Haible's intent, however well founded it may be, would nullify the express intent of her mother.

Second, Mr. Haible argues that under *Foulke* and *Restatement,* Property § 362,[3] the Court should sever the permissible from the excessive part of the appointment and give effect to the former. In *Foulke* the donee expressed a specific intent to first provide for two unmarried daughters before benefitting her other children, and a valid allocation of income was severed and given effect while that which was determined to be invalid was not given effect. The appointment of the corpus was invalidated entirely because the donor's default provisions (in the instrument creating the power) more closely approximated the donee's dispositive scheme than that which would follow from division of the valid and invalid parts.

The kind of severability found reasonable and practical in *Foulke* is not possible in this case. Here the appointment was made in favor of a trust, the provisions of which subjected *all* of its assets (including the merged appointive property) to the entire dispositive provisions of Mrs. Haible's will plus death taxes and administration expenses incidental to settling and distributing the estate. Beyond doubt that is a far wider use of the property than Mrs.

2. The Massachusetts inheritance tax is a succession tax and the primary obligation for payment is on legatees and devisees. If paid by the Executor, as Mrs. Haible directed, this is done on behalf of the beneficiaries.

3. Restatement, Property § 362 reads:
"Where one part of an appointment is ineffective but another would, if standing alone, be effective, such other part is given effect unless

(a) the two parts are so mingled that it is impossible to fix the line of division between them, or
(b) the donee's scheme of disposition is more closely approximated by allowing both parts to pass in default of appointment than by treating as valid the latter part of the appointment and allowing only the property covered by the former part to pass in default."

Buck ever contemplated. Moreover, the Trustee is under no duty or obligation to contribute from any particular assets which are in or which come into the trust. Indeed Mrs. Haible plainly intended that the appointed property be "merged" with the trust assets. Compare In re Jackson's Estate, 337 Pa. 561, 12 A.2d 338 (1940). And the direction she gave is consistent with this: the " . . . Trustee shall pay to Settlor's Executors . . . such an amount or amounts out of the *principal* of the trust estate . . . as . . . [they] shall certify to be needed . . . . " (Emphasis added.) In short, the effect of all of this is that Mrs. Haible treated the property as her own.

As to Mr. Haible's argument based upon Section (b) of the Restatement, he seems to be asserting the principle to get a contrary result. Under § 362(b) the property passes in *default* of appointment to accomplish the donee's scheme of disposition, while Mr. Haible argues the validity of *exercise* of appointment to accomplish that purpose. I do not find this persuasive because, in any event, Mrs. Haible's plan of disposition is pertinent only if she stayed within the limitations of the power. Unhappily, she did not. Compare Illustration #1, § 362, supra.[4]

### C.

In the prior opinion the Court concluded that Mrs. Haible intended to exercise the special power of appointment given to her by her mother and that she had the power to do this although the power was after-acquired. After trial we now know that if the property passes by the appointment it will necessarily be used for purposes prohibited by the specific language used by Mrs. Buck in creating the power. It follows, for this reason, that the exercise was ineffective and the Trustee will be so instructed.

4. Mrs. Haible's scheme of disposition was to *add* assets to an established trust for the benefit of her spouse and children. In default of appointment all of the property subject to the power will pass to members of the limited class, the Haible children. That will accomplish much of what was intended by Mrs. Haible because her children are remainder beneficiaries of the 1940 trust.