Robert J. WEISS, Plaintiff,

v.

Lyle P. WEISS and Wachovia
Securities, LLC,
Defendants.

C.A. No. 1941–N.

Court of Chancery of Delaware,
New Castle County.

Submitted: Jan. 23, 2007.
Decided: Feb. 15, 2007.

David F. Ferry, Jr., Esquire, Rick S.
Miller, Esquire, Ferry, Joseph & Pearce,
P.A., Wilmington, Delaware, Attorneys for
the Plaintiff.

Robert A. Penza, Esquire, Peter M.
Sweeney, Esquire, Gordon, Fournaris &
Mammarella, P.A., Wilmington, Delaware,
Attorneys for Lyle P. Weiss.

*OPINION*

LAMB, Vice Chancellor.

A disinherited son brings an action chal-
lenging the validity of his mother's express
delegation of her statutorily created power
to nominate a custodian of certain proper-
ty transferred to her grandchildren upon
her death. Although the relevant provi-
sion of the Delaware Uniform Transfers to
Minors Act does not expressly address
such a delegation, the court holds that a
proper reading of the statute necessarily
provides the right to delegate a power of
nomination. Such a reading both effectu-
ates the legislative intent in enacting the
statute and accords with analogous doc-
trines of established common law. There-
fore, the plaintiff's motion for summary
judgment must be denied, and the defen-
dants are entitled to judgment as a matter
of law.

I.

A. *The Parties*

The plaintiff in this case is Robert J.
Weiss, one of the two sons of the late
Gloria Weiss–Brown. The defendants are
Lyle P. Weiss, Gloria's other son, and Wa-

chovia Securities, LLC, a Delaware limited liability company.[1]

### B. *The Facts*

During her life, Gloria established an individual retirement account with Wachovia. In November 2004, she was hospitalized for several days and was diagnosed with multiple blood disorders at that time. She died on May 8, 2005.

Prior to her death, Gloria contacted her attorney and executed new versions of her estate planning documents. These documents included her last will and testament, a revocable trust agreement, and a change of beneficiary form for her IRA. All were executed on April 6, 2005. Under the will and the trust agreement, Lyle was named executor of his mother's estate and trustee of her trust. Furthermore, Gloria specifically disinherited Robert in her will and made no provision for him under the trust. Instead, Robert's two children, Seth Weiss and Lauren Weiss, are the beneficiaries of 50% of Gloria's residual estate. Lyle is the beneficiary of the other 50%.

Robert has not challenged the validity of the provisions contained in the trust or the will. Instead, he takes issue with the validity of the change of beneficiary form for Gloria's IRA. In pertinent part, the beneficiary form provides:

> Fifty percent (50%) [of the proceeds] shall be distributed to [Gloria's] grandchildren, Lauren R. Weiss ... and Seth D. Weiss ..., who survive [Gloria], in equal shares and per stirpes through them to the surviving issue of either of them who do not survive [Gloria], provided, however, if any such issue is under the age of twenty-one (21) years at the time the distribution is made, the distribution shall be made to a duly ap-

pointed custodian as designated by the personal representative of [Gloria's] estate under the Delaware Uniform Transfers to Minors Act to be held by such custodian until the issue attains the age of twenty-one years.

Because he was the personal representative of Gloria's estate and because Seth and Lauren are under twenty-one years of age, Lyle, acting pursuant to his purported authority under this designation, appointed himself custodian. Wachovia then distributed the appropriate monies into two separate accounts for Seth and Lauren. The accounts name Lyle as custodian pursuant to the Delaware Uniform Transfers to Minors Act.

Robert filed this action on February 15, 2006 seeking a declaratory judgment that Gloria's delegation to Lyle of the power to nominate a custodian is not specifically authorized under the Act and is thus invalid. He also sought an order of the court appointing himself as custodian of the accounts. On November 1, 2006, he filed an amended complaint that changed his demand for a substitute custodian from naming himself in that capacity to naming an "independent custodian." Robert now moves for partial summary judgment as to the validity of the actions taken by Gloria in the change of beneficiary form.

### II.

In support of his motion, Robert first says that the validity of the delegation of the power to appoint a custodian to Lyle is clearly governed by 12 *Del. C.* § 4503 and that no other provision of the Act applies in determining the validity of that delegation. Second, Robert claims that while the language of section 4503 provides that a

---

1. The record indicates that Wachovia was served with process, but has not entered an appearance in this case.

person who transfers property to a minor has the power to nominate a custodian of that property, it does not expressly state that the person may delegate such power to another individual. Thus, Gloria's purported delegation to Lyle (as the personal representative of her estate) of the right to appoint a custodian was ineffective, and Lyle had no legal ability to appoint himself or anyone else as custodian for Seth's and Lauren's accounts. Robert says that the court, after a hearing, either should approve a specific custodian and order Wachovia to transfer custodianship of the accounts to that person pursuant to 12 *Del C.* § 4507(c) or should allow Seth and Lauren to designate custodians for their respective accounts pursuant to 12 *Del C.* § 4518(d).

Lyle responds that section 4503 is inapplicable because Gloria "did not name an individual person as custodian" in the change of beneficiary form. Instead, he contends that 12 *Del C.* § 4509 is the applicable statute, and its provisions allow Gloria to delegate her power to nominate a custodian to him.

### III.

A court will grant a motion for summary judgment if the record reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] Under this standard, the court must accept as established all undisputed factual asser-

tions made by either party.[3] If certain facts are disputed, the court must adopt the nonmoving party's version of those facts for purposes of the motion.[4] Furthermore, the court should draw rational inferences in favor of the nonmoving party.[5] Finally, "[w]hen a party moves for summary judgment under ... Rule 56 and the court concludes that the moving party is not entitled to summary judgment, and the state of the record is such that the nonmoving party is clearly entitled to such relief, [the court] may grant final judgment in favor of the nonmoving party."[6]

### IV.

The question before the court is whether the relevant provision of the Act allows a donor to delegate the power to appoint a custodian or, instead, requires that a donor specifically appoint a custodian. This query has not yet been examined by the courts of any state, and the Delaware statute, at least on its face, does not explicitly provide the answer. Thus, proper resolution requires that the court apply fundamental principles of statutory interpretation to decide this novel issue.

As a preliminary matter, the court must first determine which section of the Act applies to the facts presented. Clearly, section 4503(a) controls the analysis here.[7] That statute provides:

2. Court of Chancery Rule 56(c).

3. *Merrill v. Crothall–American, Inc.*, 606 A.2d 96, 99 (Del.1992).

4. *Id.* 99–100.

5. *Id.* at 100.

6. *Goss v. Coffee Run Condo. Council*, 2003 WL 21085388, at *6 (Del.Ch. Apr.30, 2003) (citing *Bank of Del. v. Claymont Fire Co. No. 1*, 528 A.2d 1196, 1199 (Del.1987)).

7. As mentioned above, Lyle contends that section 4503 is inapplicable and that other provi-

sions of the Act, in particular sections 4505, 4506, or 4509, control. The court disagrees. Section 4509 speaks only to how custodial property is actually created and transferred, not to how a custodian is nominated. *See* 12 *Del. C.* § 4509. Sections 4505 and 4506 are similarly inapplicable because those provisions apply only to property passing through an estate or trust. *See* 12 *Del. C.* §§ 4505, 4506. The IRA here was not a trust or estate asset and did not pass through probate, which is the reason why Gloria executed the change of beneficiary form.

A person having the right to designate the recipient of property transferable upon the occurrence of a future event may revocably nominate a custodian to receive the property for a minor beneficiary upon the occurrence of the event by naming the custodian. . . . The nomination may be made in a will, a trust, a deed, an instrument exercising a power of appointment or in [a] writing designating a beneficiary of contractual rights which is registered with or delivered to the payor, issuer or other obligor of the contractual rights.[8]

Because Gloria enjoyed "the right to designate the recipient" of her IRA, she also possessed the right to nominate a custodian "upon the occurrence of a future event," i.e. her death. She chose to delegate that power in the change of beneficiary form, which is a "writing designating a beneficiary of contractual rights." She delivered that form to Wachovia, the "payor, issuer or other obligor" of the IRA, and Wachovia accepted it. Thus, section 4503(a) plainly applies.

The court now turns to the validity of Gloria's delegation to Lyle. The predominant goal of statutory construction is "to ascertain and give effect to the intent of the legislature."[9] When a statute is unambiguous, "there is no need for judicial interpretation, and the plain meaning of the statutory language controls."[10] An ambiguous provision, however, requires the court to undertake a deeper analysis.[11] A statute is ambiguous if it is "reasonably susceptible of different conclusions or interpretations."[12] Additionally, "if a literal interpretation of the words of the statute would lead to a result so unreasonable or absurd that it could not have been intended by the legislature," then ambiguity is likely present.[13]

The court finds that section 4503(a) is reasonably susceptible of two different interpretations. As Robert argues, the statute does not on its face specifically allow for the delegation of the power to nominate a custodian. For that reason, his reading of section 4503(a) is plausible. On the other hand, the statute does not expressly prohibit the delegation of the power to nominate a custodian. So, is delegation prohibited because it is not expressly permitted, or is delegation permitted because it is not expressly prohibited? The text of section 4503(a) does not answer this question, and the court must rely on basic principles of statutory construction to determine which interpretation controls.

When called upon to interpret an ambiguous statutory provision, the court must be mindful that if a literal interpretation would work "a result inconsistent with the general statutory intention, such interpretation must give way to the general intent."[14] This is so because a court

8.  12 *Del. C* § 4503(a).

9.  *Rubick v. Security Instrument Corp.*, 766 A.2d 15, 18 (Del.2000) (citing *Ingram v. Thorpe*, 747 A.2d 545, 547 (Del.2000)).

10. *Lawhorn v. New Castle Co.*, 2006 WL 1174009, at *2 (Del.Super. May 1, 2006) (citing *Eliason v. Englehart*, 733 A.2d 944, 946 (Del.1999)).

11. Statutory construction is, of course, an issue for a court to decide as a matter of law. Thus, a court should resolve statutory ambiguity on summary judgment, whereas contractual ambiguity normally requires trial because factual issues must be decided.

12. *Newtowne Vill. Serv. Corp. v. Newtowne Rd.*, 772 A.2d 172, 176 (Del.2001).

13. *Dir. of Revenue v. CNA Holdings, Inc.*, 818 A.2d 953, 957 (Del.2003).

14. *Lewis v. Am. Ind. Ins. Co.*, 2004 WL 1426964, at *11 (Del.Super. June 22, 2004) (citing *Home Ins. Co. v. Maldonado*, 515 A.2d 690, 695–96 (Del.1986)).

must construe a statute in a way "that will promote its apparent purpose," thereby effectuating the legislature's intentions in passing the law.[15] Furthermore, the legislature is "presumed to know the common law before a statute is enacted."[16] Thus, in choosing the appropriate interpretation, a court should not assume that "a change in the common law was intended beyond that which is clearly indicated by express terms or by necessary implication from the legislative language used."[17]

Applying these principles, Robert's overly conservative reading of section 4503(a)—namely, that it bars a donor who transfers property to a minor beneficiary from delegating her power to appoint a custodian—is wrong. The legislature's underlying purpose in passing the Act was to create a convenient and inexpensive way to make and maintain a gift of money or other property to a minor.[18] Robert's overly narrow and exceedingly literal interpretation of section 4503(a) would erode that overarching goal. One need only follow Robert's interpretation to its ultimate functional conclusion to understand why this is so.

If section 4503(a) does not allow Gloria to delegate her right to appoint a custodian to her personal representative, then no custodian would have been properly nominated under section 4503(a). The court would then have to look to section 4507(c), which deals with transfers by obligors when no custodian has been nominated. That section provides:

If no custodian has been nominated under § 4503 of this title ... a transfer under this section may be made to an adult member of the minor's family or to a trust company unless the property [exceeds $50,000 in value, in which case] the custodian designated by the [obligor must be] approved by the Court.[19]

Because more than $50,000 is involved here, the obligor (Wachovia) would have to seek judicial approval of the proposed custodian. Given that Lyle, as Seth's and Lauren's uncle, is considered a "member of the minor's family" under the statutory scheme[20] and that Gloria specifically entrusted Lyle with the administration and oversight of her entire estate, it would be most reasonable under the circumstances for the court to appoint Lyle as custodian. Lyle would then have the option of appointing a successor custodian under section 4518(b) if he so wished.[21]

Functionally, then, even if the court adopted Robert's cramped interpretation of section 4503(a), the end result would likely be the same. Yet, the expeditious and cost-effective process envisioned by the Act would suffer greatly. Furthermore, Robert's reading would, by implication, substitute the court's limited statutory power to appoint either an adult member of the family or a trust company in the place of Gloria's broad, unrestricted right to nominate *any* person for the custodial position. Robert's interpretation, then, would result in an inefficient process plainly at odds with both the leg-

---

15. *Lawhorn,* 2006 WL 1174009, at *2 (citing *Eliason,* 733 A.2d at 946).

16. *Nelson v. Frank E. Best, Inc.,* 768 A.2d 473, 482 (Del.Ch.2000) (citing *Makin v. Mack,* 336 A.2d 230, 234 (Del.1975)).

17. *Id.*

18. *Staley v. Peirson,* 2001 WL 1117508, at *2 (Del.Ch. Sept.10, 2001).

19. 12 *Del. C.* § 4507(c).

20. 12 *Del. C.* § 4501(10).

21. 12 *Del. C.* § 4518(b),

islative purposes of the Act and the intent of the donor who originally owned the property transferred.

By contrast, a broader interpretation of section 4503(a)—one which encompasses the ability of a donor to delegate the power to nominate a custodian—conforms with established principles of the common law involving a similar area of jurisprudence: powers of appointment. Generally speaking, a power of appointment is the delegation of authority to a particular individual which enables that person to dispose of an interest vested in another.[22] Essentially, the Delaware legislature, by enacting section 4503(a), created a "power of appointment" to nominate a custodian in any individual wishing to transfer property for the benefit of a minor.

The common law in Delaware is clear that the controlling factor in determining the scope of a power of appointment is the intent of the donor.[23] Because the overarching purpose of the Act is to create by statute a convenient and inexpensive way to make and maintain a gift of money or other property to a minor, the Delaware legislature likely intended to grant the holder of the power to nominate a custodian—in this instance, Gloria—as much discretion as possible under section 4503(a).[24] Thus, that provision should not be read to prevent an express delegation of the power to nominate if the holder of that power clearly and unequivocally manifests the intention to delegate.[25]

In sum, the better and more logical reading of section 4503(a) is one that allows a party who purports to transfer property under that section to delegate the power to nominate a custodian to another individual. Any other interpretation of that provision would be at odds with the legislative intent embodied in the Act and

**22.** *See, e.g., Leach v. Hyatt*, 244 Va. 566, 423 S.E.2d 165, 167 (1992).

**23.** *In re Buck Trust*, 301 A.2d 328, 331 (Del. Ch.1973) (citing *Equitable Trust Co. v. Foulke*, 40 A.2d 713 (Del.Ch.1945)).

**24.** The court also observes that an important purpose and goal that the legislature had in mind when it passed the Act was to provide for certainty and protection for obligors on accounts. The fact that section 4507, which deals with procedures for the transfer of accounts held by obligors, was included in the Act supports this notion. It is noteworthy in this regard that Wachovia has not questioned the propriety of Gloria's delegation of her power of nomination to Lyle and has not objected to Lyle naming himself as custodian on the accounts. Moreover, it seems likely that Wachovia and other similarly situated obligors have accepted numerous other change of beneficiary forms that purport to delegate the power to nominate a custodian in circumstances similar to those found here. To adopt Robert's construction of section 4503(a) would needlessly call into question the validity of delegations and would create a sizable and unnecessary administrative burden on obligors to assure compliance with transfers previously effectuated under that provision.

**25.** Decisions from other jurisdictions which have dealt with the propriety of the delegation of a power of appointment also support this conclusion. While it is normally true that one "invested with discretionary authority cannot assign or transfer or delegate that authority or power to another," this general rule has been held not to apply where a donee of a power of appointment could have appointed himself as the beneficiary of that power. *See De Charette v. De Charette*, 264 Ky. 525, 94 S.W.2d 1018, 1020–21 (1936) (citing cases). There is nothing in section 4503(a) that would prevent a transferor of property from appointing herself custodian of the property in the case of certain future events. For instance, a transferor could nominate herself as custodian and expressly provide that the transfer of the property and the initiation of the custodial relationship would take place, say, with the first pitch of the first game of the 2007 Major League Baseball season.

contrary to analogous principles of common law.

### V.

For the foregoing reasons, the plaintiff's motion for partial summary judgment is DENIED and summary judgment for the defendants is GRANTED.

IT IS SO ORDERED.