# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHAREHOLDER REPRESENTATIVE SERVICES LLC, solely in its capacity as the Representative of the Stockholders,<br><br>Plaintiff,<br><br>v.<br><br>DC CAPITAL PARTNERS FUND II, L.P., and CALIBURN HOLDINGS LLC (F/K/A JANUS HOLDCO LLC),<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 2021-0465-KSJM |

## MEMORANDUM OPINION

Date Submitted: November 4, 2021
Date Decided: February 14, 2022

Thomas A. Uebler, Joseph L. Christensen, Kathleen A. Murphy, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware; *Counsel for Plaintiff Shareholder Representative Services LLC*.

Philip Trainer, Jr., Marie M. Degnan, ASHBY & GEDDES, Wilmington, Delaware; *Counsel for Defendants DC Capital Partners Fund II, L.P. and Caliburn Holdings LLC*.

**McCORMICK, C.**

This is a contract dispute brought by sellers to compel buyers to pay indemnity holdbacks owed under a stock purchase agreement. This decision denies the defendants' motion to dismiss the complaint.

The defendants' lead argument in support of dismissal is that this court lacks subject matter jurisdiction because this case involves a damages claim for breach of contract. Historically, the Superior Court has had subject matter jurisdiction over this type of action. In 1999, the Delaware General Assembly adopted Section 111 of the Delaware General Corporation Law granting this court concurrent jurisdiction to interpret certain types of instrument, including agreements for the sale of stock. Section 111 provides that this court "may" exercise subject matter jurisdiction over claims within its scope. The defendants argue that this language grants the court discretion to decline jurisdiction over claims described by Section 111 that do not otherwise fall within the court's subject matter. The plaintiff argues that this language grants a litigant the right to elect to file such claims in this court and that, once the election is made, the court may not decline jurisdiction. This decision adopts the plaintiff's interpretation and concludes that the court lacks the discretion to decline jurisdiction once it is established under Section 111.

The defendants also argue that aspects of the plaintiff's claims should be dismissed for lack of ripeness because final damages have not yet been awarded in the underlying action giving rise to claims for indemnification, but this decision rejects that argument too. At the very least, the plaintiff's claims challenging the timeliness and other aspects of the indemnification claims are ripe.

## I.  FACTUAL BACKGROUND

The facts are drawn from the Verified Complaint (the "Complaint").[1]

Defendant Caliburn Holdings LLC ("Caliburn") acquired Janus ESOP Holdings Inc. (the "Company") pursuant to a Stock Purchase Agreement (the "Agreement") dated November 20, 2017.

The Agreement established two indemnity holdbacks, which are amounts withheld from the price paid by the buyer at closing to cover the seller's indemnity obligations.  The first holdback in the amount of $1,775,000, the "Indemnification Holdback," secured all indemnifiable claims.  The second holdback in the amount of $2,225,000, the "Special Indemnity Holdback," secured indemnity claims specific to litigation identified in the Agreement.  Sometimes parties stipulate to place holdback amounts in escrow, but the parties here did not do so.  Defendant DC Capital Partners Fund II, L.P. ("DC Capital" and together with Caliburn, "Defendants"), however, guaranteed the holdbacks.

The holdbacks became payable on their expiration date, subject to properly asserted indemnification claims.  The Indemnification Holdback expired 12 months after closing, on December 15, 2018.  The Special Indemnity Holdback expired 18 months after closing, on June 15, 2019.

Caliburn asserted three indemnification claims against the Indemnification Holdback.  The first claim was accepted and paid in full reducing the Indemnification Holdback to $1,337,630.  The second claim sought $2,062,270 for overbilling of the U.S.

---

[1] *See* C.A. No. 2021-0465-KSJM, Docket ("Dkt.") 1 ("Compl.").

Department of State by a Caliburn subsidiary (the "DCAA Audit Claim"). The third claim sought $6,201,920 for Caliburn's tax liabilities to the Afghan Large Taxpayer Office (the "Afghan Tax Claim"). Based on these claims, Caliburn did not release the Indemnification Holdback to Plaintiff on December 15, 2018.

Caliburn asserted three claims against the Special Indemnity Holdback. The first claim was for $7,147,000 of projected losses from an ongoing audit by the Defense Contract Audit Agency. The second and third claims were for $160,000 in settlement costs and $3,919,020.98 in litigation costs, respectively, related to a suit with an entity named Bestoon. Based on these claims, Caliburn did not release the Special Indemnity Holdback on June 15, 2019.

Plaintiff Shareholder Representative Services LLC ("Plaintiff") represents sellers under the Agreement. Plaintiff filed this action on May 27, 2021 to compel payment of the holdbacks. Plaintiff also seeks pre-judgment interest at the contractually established rate of 10.5% and attorneys' fees.

On June 24, 2021, Defendants moved to dismiss or, alternatively, stay the Complaint. The motion was fully briefed on August 25, 2021,[2] and the court heard oral arguments on November 4, 2021.[3]

---

[2] Dkt. 10, Opening Br. in Supp. of Defs.' Mot. to Dismiss or, in the Alt., to Stay ("Defs.' Opening Br."); Dkt. 12, Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss or, in the Alt., to Stay; Dkt. 14, Reply Br. in Further Supp. of Defs.' Mot. to Dismiss or, in the Alt., to Stay ("Defs.' Reply Br.").

[3] Dkt. 18, Tr. of Oral Arg. on Defs.' Motion to Dismiss or Stay ("Oral Arg. Tr.").

## II.    LEGAL ANALYSIS

Defendants have moved to dismiss this action for lack of subject matter jurisdiction. Alternatively, Defendants have moved to dismiss or stay this action on the grounds that the DCAA Audit Claim is not ripe.[4]

### A.    Subject Matter Jurisdiction

The Court of Chancery is one "of 'limited jurisdiction'; it acquires subject matter jurisdiction 'only when (1) the complaint states a claim for relief that is equitable in character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law or (3) Chancery is vested with jurisdiction by statute.'"[5]  Plaintiff bears the burden of establishing the court's subject matter jurisdiction.[6]

Plaintiff argues that this court has subject matter jurisdiction over this action under 8 *Del. C.* § 111.  In relevant part, Section 111 provides that:

> [a]ny civil action to interpret, apply, enforce or determine the validity of the provisions of . . . [a]ny instrument, document or agreement . . . by which a corporation creates or sells, or offers to create or sell, any of its stock, or any rights or options respecting its stock . . . *may* be brought in the Court of Chancery, except to the extent that a statute confers exclusive

---

[4] In briefing, Defendants argued that both the Afghan Tax Claim and the DCAA Audit Claim should be stayed because neither calculation is final.  Defs.' Opening Br. at 32. Defendants later narrowed their ripeness argument to target the DCAA Audit Claim only. Oral Arg. Tr. at 19:14–18.

[5] *Vama F.Z. Co. v. WS02, Inc.*, 2021 WL 1174690, at *2 (Del. Ch. Mar. 29, 2021) (quoting *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019), *aff'd*, 2021 WL 1042985 (Del. Mar. 18, 2021) (TABLE)).

[6] *See Hall v. Coupe*, 2016 WL 3094406, at *2 (Del. Ch. May 25, 2016); *Morgan v. Carpenter*, 2014 WL 7192476, at *3 (Del. Ch. Dec. 18, 2014); *Pitts v. City of Wilm.*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009).

jurisdiction on a court, agency or tribunal other than the Court of Chancery.[7]

Defendants concede that the Agreement is an instrument for the sale of stock within the scope of Section 111.[8] Defendants argue, however, that the court should nevertheless decline jurisdiction. Defendants' argument has three parts. They first argue that the permissive language of Section 111 grants the Court of Chancery nonexclusive or concurrent jurisdiction. They next argue that the court has the discretion to decline jurisdiction over actions brought pursuant to Section 111. They last argue that the court should exercise its discretion here to deny jurisdiction because Plaintiff's claims do not implicate this court's specialized expertise.

Defendants' first premise is correct—Section 111 confers this court with nonexclusive jurisdiction over actions within its scope, as is evident from the plain language of Section 111. Other provisions of the DGCL expressly vest the Court of Chancery with "exclusive jurisdiction" to hear matters brought under that particular section.[9] By contrast, the concluding phrase of Section 111(a) provides that actions

---

[7] 8 *Del. C.* § 111(a) (emphasis added).

[8] Defs.' Opening Br. at 23–24 (stating that "there is no question that the SPA at issue here meets the definition of §111").

[9] *See* 8 *Del. C.* § 145(k) ("The Court of Chancery is *hereby vested with exclusive jurisdiction* to hear and determine all actions for advancement of expenses or indemnification brought under this section or under any bylaw, agreement, vote of stockholders or disinterested directors, or otherwise." (emphasis added)); *id.* § 203(e) ("The Court of Chancery is *hereby vested with exclusive jurisdiction* to hear and determine all matters with respect to this section." (emphasis added)); *id.* § 205(e) ("The Court of Chancery is *hereby vested with exclusive jurisdiction* to hear and determine all actions brought under this section." (emphasis added)); *id.* § 220(c) ("The Court of Chancery is

5

thereunder "*may* be brought in the Court of Chancery, except to the extent that a statute confers exclusive jurisdiction on a court, agency or tribunal other than the Court of Chancery."[10] The word "may" in the first clause indicates that this court is a nonexclusive option for litigants. Indeed, the exception found in the second clause that excludes actions delegated to the exclusive jurisdiction of other agencies or tribunals is only necessary because Section 111 creates concurrent and not exclusive jurisdiction. The nonexclusive nature of Section 111 jurisdiction has been acknowledged by the General Assembly[11] and by multiple decisions of this court.[12]

---

*hereby vested with exclusive jurisdiction* to determine whether or not the person seeking inspection is entitled to the inspection sought." (emphasis added)).

[10] 8 *Del. C.* § 111 (emphasis added).

[11] Del. S.B. 371, 148th Gen. Assembly, Synopsis (2016) (stating that "[t]he amendment to Section 111(a)(2) permits the Court of Chancery to exercise *non-exclusive subject matter jurisdiction* over civil actions" described in the statute (emphasis added)).

[12] *See, e.g.*, *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016) (observing that "8 *Del. C.* § 111, . . . provides the Court of Chancery with *nonexclusive jurisdiction* to interpret, apply, enforce or determine the validity of certificates of incorporation, bylaws, stock instruments, and other corporate instruments" (citation omitted, emphasis added)); *Duff v. Innovative Disc. LLC*, 2012 WL 6096586, at *6 (Del. Ch. Dec. 7, 2012) (holding that, with regard to Section 111's analogue, 6 *Del. C.* § 18-111, "[d]efendant is correct that the statute's [Section 111 analogue, 6 *Del. C.* § 18-111] use of the word 'may' means that the jurisdiction it authorizes is concurrent, as opposed to exclusive"). One case of the Delaware Superior Court has been cited for the proposition that jurisdiction under Section 111 is effectively exclusive. In *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2004 WL 2050527 (Del. Super. Ct. Sept. 15, 2004), two sets of limited partners brought suit against general partners for breach of fiduciary duty. The defendants moved to dismiss for lack of subject matter jurisdiction, arguing that this court had sole jurisdiction over the dispute under Section 111's DRULPA analogue, 6 *Del. C.* § 17-111. In granting the motion, the court held that "Delaware courts have consistently interpreted § 17-111 as maintaining the . . . rule that Chancery has sole jurisdiction over internal partnership affairs, except after some event has occurred, such as an accounting or drafting a separate instrument, that obviates equity's superior ability to resolve all outstanding matters between the parties." *Id.* at *5. Litigants in this court have cited to this statement for the proposition that Section

6

Defendants' second premise—that Section 111 is discretionary—involves a more nettlesome analysis. Plaintiff disputes that Section 111 grants the court discretion to decline jurisdiction over cases described in the statute, an interpretation that this decision refers to as the "non-discretionary interpretation." Defendants contend that the word "may" renders this court's exercise of subject matter jurisdiction under Section 111 discretionary, an interpretation that this decision refers to as the "discretionary interpretation."

"The goal of statutory [interpretation] is to determine and give effect to legislative intent."[13] The analysis starts and often ends with the plain language of the statute.[14] If the plain language is reasonably susceptible to multiple meanings, the court ascertains the meaning of the statute through other sources and tools, including by reviewing the statute's legislative history and deploying canons of statutory construction.[15]

---

17-111 confers exclusive jurisdiction. But the Superior Court went on to qualify this statement, concluding that for the Court of Chancery to have "sole jurisdiction" to interpret partnership agreements "makes sense in light of the fact that disputes between partners will almost always involve equitable issues." *Id.* The court did not find that Section 17-111 confers exclusive jurisdiction over actions that do not involve equitable claims or remedies.

[13] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999).

[14] *See Bd. of Adjust. of Sussex Cty. v. Verleysen*, 36 A.3d 326, 331 (Del. 2012) ("[W]hen a statute is clear and unambiguous there is no need for statutory interpretation." (citing *State v. Skinner*, 632 A.2d 82, 85 (Del. 1993))); *In re F. Mobile, Inc.*, --- A.3d ---, 2022 WL 322013, at *9 (Del. Ch. Feb. 3, 2022) (collecting cases concerning the principles of statutory interpretation).

[15] *Clark v. State*, 184 A.3d 1292 (Del. 2018) (TABLE) ("When a statute is ambiguous, a court may refer to the legislative history to interpret the statute." (citing *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1287 (Del. 1994))); *Agar v. Judy*, 151 A.3d 456, 473 (Del. Ch. 2017) ("When interpreting statutory language, Delaware courts deploy well-established canons of statutory interpretation.").

7

The plain language of Section 111 favors the non-discretionary interpretation. The basis in the plain language for interpreting Section 111 as discretionary is the word "may." "May" is a helping modal verb used in conjunction with a main verb to indicate permission. Here, the main verb ("be brought") is phrased in the passive voice, forcing attention to the direct object ("any civil action"), and requiring the reader to infer the identity of the subject-actor who is granted permission to bring a civil action. But the inference is not difficult. Who "brings" actions? Plaintiffs. Courts do not "bring" actions. The plain language of Section 111 thus grants plaintiffs permission to bring actions described in that statute in the Court of Chancery. The permissive language of Section 111 does not, on its face, suggest that the General Assembly intended to grant this court the discretion to decline jurisdiction over cases described in that statute.

Although the Delaware Supreme Court has never interpreted the portion of Section 111 at issue, the non-discretionary interpretation finds support in this court's *Duff* decision.[16] There, the court concluded that identical language in Section 111's Delaware Limited Liability Company Act analogue, 6 *Del. C.* § 18–111, did not grant the court the discretion to decline subject matter jurisdiction.[17] Like here, the defendants argued that Section 18-111 created concurrent jurisdiction and that the court could exercise its discretion to decline jurisdiction over actions described in the statute. The court agreed

---

[16] 2012 WL 6096586.

[17] *See id.* at *6.

8

that Section 18-111 created concurrent jurisdiction but rejected the rest of the argument, holding that:

> litigants . . . who state a claim under 6 *Del. C.* § 18-111, have a choice of pursuing that claim in the Court of Chancery or in another appropriate forum. But, [the movant] has not cited any authority, nor does the Court know of any, that would imply that once such a plaintiff has chosen to bring its claim here, this Court still would have the discretion to refuse to hear it. As I read the statute, this Court does not have such discretion.[18]

Defendants root their discretionary interpretation of Section 111 in *Helix*, where this court cited the permissive language of Section 111 when declining to assert subject matter jurisdiction over a claim for breach of contract.[19] In *Helix*, the court concluded that the plaintiff had not adequately alleged a basis for subject matter jurisdiction in the complaint and raised this concern *sua sponte*. In response, the plaintiff stretched to argue that Section 111 might provide a basis for jurisdiction, although the complaint did not expressly identify it as a basis. In the alternative, the plaintiff requested jurisdictional discovery for the purpose of demonstrating that Section 111 provided a basis for subject matter jurisdiction. The court rejected the plaintiff's request and transferred the matter to the Superior Court pursuant to 10 *Del. C.* § 1902.[20]

At the end of the *Helix* court's analysis, the court cited in passing the permissive language of Section 111(a) ("may be brought") in support of the observation that "the

---

[18] *Id.*

[19] *See Helix Generation LLC v. TransCan. Facility USA, Inc.*, 2019 WL 2068659, at *2 (Del. Ch. May 10, 2019).

[20] *Id.*

9

Superior Court has indisputable jurisdiction here: Section 111(a), to the extent it applies, provides permissive, not mandatory jurisdiction."[21] Defendants point to this passage of *Helix* as support for the discretionary interpretation, but the better take on this passage is that the court was emphasizing that the Superior Court unquestionably had jurisdiction over the matter in light of the concurrent nature of jurisdiction vested under Section 111. *Helix* should not be read to support the discretionary interpretation.[22]

To the extent that *Duff* and cases interpreting *Helix* demonstrate that the plain language of Section 111 is reasonably susceptible to multiple meanings, the next best indicators of legislative intent are contemporaneous legislative records.[23] Here, the synopsis does not directly inform the issue.[24] And Section 111 passed through the judiciary

---

[21] *Id.*

[22] In fairness, the quoted passage of *Helix* could be read as supporting the discretionary interpretation. Indeed, I flagged that *Helix* could be read in this manner in *Legent*. *Legent Gp., LLC v. Axos Fin., Inc.*, 2021 WL 73854, at *2 n.14 (Del. Ch. Jan. 8, 2021). And in *Online Healthnow, Inc. v. CIP OCL Investors, LLC*, the Superior Court interpreted *Helix* similarly and described Section 111 as conferring "discretionary jurisdiction." 2020 WL 3047230, at *3 (Del. Super. Ct. May 28, 2020). In *Legent*, however, I jumped the analysis and found that the exercise of jurisdiction was appropriate even if I had the discretion to decline it. And in *Online Healthnow*, Section 111 was really just a side-issue. That case involved the enforcement of a forum selection clause and did not require the court to interpret the language of Section 111 directly. In the end, the plain language of Section 111 stands on its own and can be reconciled with *Helix*.

[23] *See, e.g.*, *Kent Gen. Hosp. (Inc.) v. Kent Cty. Bd. of Assessment*, 1995 WL 478797, at *4 (Del. Ch. July 19, 1995) (stating that generally "[t]he synopsis of the bill is a proper source from which the court can discern the legislative intent" (citing *Carper v. New Castle Cty. Bd. of Educ.*, 432 A.2d 1202, 1205 (Del. Ch. 1981))).

[24] *See* Del. S.B. 137, 140th Gen. Assembly, Synopsis (1999) ("Section 2. Section 111 is new. It clarifies that the Court of Chancery may entertain actions to interpret, apply or enforce any provision of the certificate of incorporation or bylaws of a corporation, regardless of whether there is some independent basis for subject matter jurisdiction in that

10

committees and the full chambers without substantive comment.[25]  The court may also look to contemporaneous commentary as an indicator of legislative intent,[26] but that commentary is similarly uninformative on this issue.[27]

---

court. Section 111 is not intended to limit in any way the subject matter jurisdiction of the Court of Chancery established under preexisting law.").

[25] *See* House Judiciary Comm. Mins. from the June 9, 1999 Meeting at 2 ("The final item on the agenda was SB137, related to the General Corporation Law. Secretary of State Freel expressed his support of this bill. Without further discussion, the committee motioned to release the bill. Rep Ewing made that motion, with Rep. Buckworth seconding. The vote to release SB137 was 7 on its merits." (emphasis and capitalization omitted)).  When the Senate voted unanimously in support of then-SB 137, the bill's sponsor Senator Thomas Sharp stated: "Senate Bill 137 is the annual legislation we get from the Delaware Bar Association to update our general corporation laws.  This bill has been cleared by the corporation committee of the Delaware bar association, has been reviewed and approved by the Secretary of State's Office and all other people who have an interest in our corporation laws."  Del. S.J. 140th Gen. Assembly 98 (1999) (statement of Senator Thomas Sharp) (audio on file).

[26] *See, e.g.*, *Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257, 265 (Del. Ch. 1987) (looking to "contemporaneous and authoritative commentary" to inform legislative intent behind a statutory amendment).

[27] The prevailing wisdom is that Section 111 was adopted to give "the Court of Chancery jurisdiction over some subject matter that is not inherently equitable to take advantage of the Court's special corporate expertise."  *Kraft*, 145 A.3d at 974 (collecting authorities); *accord* Lewis S. Black, Jr. & Frederick H. Alexander, *Analysis of the 1999 Amendments to the Delaware General Corporation Law* 8-2 (1999) ("In light of the Court of Chancery's national reputation to handle business litigation, the drafters of the amendment believed that giving the Chancery Court jurisdiction over all matters involving the interpretation of corporate charters and by-laws was in the best interests of Delaware's jurisprudence and its corporate constituency."); James L. Holzman & Thomas A. Mullen, *2000 Review of Developments in Corporation Law* 84 (2000) ("This new section confers upon the Delaware Court of Chancery subject matter jurisdiction over actions to interpret, apply or enforce the provisions of the certificate of incorporation or the bylaws.  The statute affirms the Court of Chancery's jurisdiction over such intra-corporate disputes where equitable jurisdiction may currently be uncertain.  The new provision is not intended to limit the subject matter jurisdiction of the Court of Chancery under prior law.  Although the provision was modeled upon Section 17-111 of the Delaware limited partnership statute and Section 18-111 of the Delaware LLC statute, it contrasts with those provisions in that it does not confer Chancery jurisdiction over all disputes involving the rights and duties of

11

In the absence of evidence of clear legislative intent, this court may resort to canons of statutory construction. Providing soft support for the non-discretionary interpretation is the canon that a statute should be read with a presumption against changes to the common law.[28] Defendants argue for an interpretation of Section 111 that allows the court to decline jurisdiction whenever the cause of action does not implicate the court's special expertise.[29] Under common law, however, "great weight [is afforded] to plaintiff's choice of forum," and a court will ignore that choice "only [in] extraordinary circumstances."[30] Interpreting

---

the corporation, the directors, and the stockholders."). Proponents of both discretionary and non-discretionary interpretations of Section 111 could wield this sentiment in their favor. Proponents of a discretionary approach could argue that it is in the best interests of the beneficiaries of this court to grant the court the discretion to limit filings on its docket to those issues involving the court's expertise. Proponents of a non-discretionary approach could argue that allowing the court to decline jurisdiction as to a wide variety of claims could lead to wasteful inefficiencies for corporate constituents pursuing litigation under Section 111. In the end, the commentary cuts both ways and does not directly address whether the legislature intended to grant this court the discretion to decline jurisdiction under Section 111.

[28] *See, e.g.*, *Makin v. Mack*, 336 A.2d 230, 234 (Del. 1975) (stating that the "repeal of common law rights and duties is not favored and is to be announced only in clear cases") (citing *Cohen v. Krigstein*, 114 A.2d 225, 227 (Del. Super. Ct. 1955)); *Weiss v. Weiss*, 952 A.2d 149, 153 (Del. Ch. 2007) (noting that when a court interprets an ambiguous statutory provision the court must assume that the common law was not displaced unless "clearly indicated" by the statute's language); *Kulp v. Timmons*, 944 A.2d 1023, 1031 (Del. Ch. 2002) (construing a statute against altering the common law because there was no evidence the General Assembly intended to "displace the applicable principles of common law"); *Nelson v. Frank E. Best Inc.*, 768 A.2d 473, 482 (Del. Ch. 2000).

[29] *See, e.g.*, Defs.' Opening Br. at 24, 29.

[30] *RWI Acq. LLC v. Todd*, 2012 WL 1955279, at *6 (Del. Ch. May 30, 2012) (citations and internal quotation marks omitted); *see also Gramercy Emerging Mkts. Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1037 (Del. 2017) ("The short-hand phrase overwhelming hardship emerged from the post *Cryo–Maid* case law, reflecting our courts' reluctance to lightly disturb a plaintiff's first choice of fora.") (citation and internal quotation marks omitted); *Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1198 (Del. 1997) ("Delaware courts consistently uphold a plaintiff's choice of forum except in rare cases.") (citations omitted);

12

Section 111 as discretionary under a special-expertise test would deviate from multiple common law rules that give deference to a plaintiff's choice of forum. This point favors a non-discretionary interpretation.

For these reasons, the court adopts the non-discretionary interpretation of Section 111.[31] In light of this holding, the decision does not address the third part of Defendants' argument—that the court should exercise its discretion to deny jurisdiction. This decision also does not reach Plaintiff's alternative arguments for invoking the court's subject matter jurisdiction.[32] Because the parties do not dispute that the Complaint asserts a cause of action under Section 111, this court has subject matter jurisdiction over this action. The motion to dismiss for lack of subject matter jurisdiction is denied.

---

*Aveta, Inc. v. Colon*, 942 A.2d 603, 605 (Del. Ch. 2008) ("Delaware's courts frequently repeat the adage that only in rare cases can a defendant successfully defeat a plaintiff's choice of forum.") (citations omitted); *Asten v. Wangner*, 1997 WL 634330, at *1 (Del. Ch. Oct. 3, 1997) ("It is well recognized, however, that plaintiffs should not be denied their choice of an appropriate forum absent significant countervailing circumstances related to judicial economy, efficiency and fairness.").

[31] To be clear, I admire the boldness of the discretionary interpretation and would love for that to be the law of the land. After all, what more could a busy judge want than the ability to unilaterally decline to hear certain cases brought before her or, perhaps as exciting, the ability to gift cases to her sister court like they are cars on Oprah? Absent further direction from the high court or the General Assembly, however, I am obligated to stick to the non-discretionary interpretation for the reasons set out in this decision.

[32] Plaintiff also argues that its claims are equitable and thus the court has subject matter jurisdiction under 10 *Del C.* § 341, but the court does not reach this issue subject matter jurisdiction is appropriate under Section 111.

**B.      Ripeness**

Delaware courts will decline to exercise jurisdiction over a case unless the underlying controversy has "matured to a point where judicial action is appropriate."[33] The purpose of the ripeness doctrine is twofold: first, it seeks to conserve limited judicial resources, and second, it allows the court to "avoid rendering a legally binding decision that could result in premature and possibly unsound lawmaking."[34]

Determining whether a claim is ripe requires a "common sense assessment" that weighs the movant party's interest in seeking immediate relief against the court's concern for conserving judicial resources by avoiding issuance of a premature decision.[35] If "litigation sooner or later appears to be unavoidable and where the material facts are static," a case is ripe for consideration.[36] However, "[i]f facts are still unknown or changing, . . . the court should be reluctant to weigh into the controversy, for fear it might be offering only advice and a premature binding decision."[37]

Defendants argue that the DCAA Audit Claim is not ripe because "[a] final decision from the U.S. Army Corps of Engineers is pending," and therefore the final indirect cost

---

[33] *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989) (citing *Schick Inc. v. Amalg. Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987)).

[34] *XL Specialty Ins. Co. v. WMI Liquid. Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (citing *Stroud*, 552 A.2d at 480).

[35] *Id.*

[36] *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 816 (Del. 2018) (quoting *XL Specialty*, 93 A.3d at 1217).

[37] *Id.* (citing *Calagione v. City of Lewes Plan. Comm'n*, 2007 WL 4054668, at *3 (Del. Ch. Nov. 13, 2007)).

rates are uncertain.[38]  Defendants further contend that it is possible the U.S. Army Corps of Engineers determines there are no damages, which would "obviate the need for judicial intervention."[39]

Because Defendants' ripeness argument is limited to the DCAA Audit Claim, and Defendants contend that the other aspects of the case are ripe for resolution, the most Defendants could reasonably achieve from their ripeness argument is a stay of proceeding in connection with the DCAA Audit Claim.  A stay in connection with the DCAA Audit Claim is not warranted here.

Although it is true that potential damages resulting from the DCAA Audit Claim are not certain, the facts are sufficiently static so as to render the entire dispute ripe.  Plaintiff's claim for the indemnification holdbacks accrued on December 15, 2018 and June 15, 2019, when the holdbacks were due to be released.  Defendants have yet to pay those amounts. Plaintiff raises process deficiencies with the DCAA Audit Claim, arguing that it was untimely and otherwise deficient because Caliburn failed to cooperate with Plaintiff in defending against the proceedings, failed to keep Plaintiff reasonably informed, failed to consult with Plaintiff prior to settlement, and failed to attempt to resolve its dispute with Plaintiff in good faith.  The court will need to evaluate the process disputes to determine whether the holdbacks were proper.  These aspects of the parties' dispute over the DCAA Audit Claim are ripe for judicial determination.

---

[38] Defs.' Opening Br. at 31–32.

[39] Defs.' Reply Br. at 19–20 (quoting *XL Specialty*, 93 A.3d at 1217–18 (internal quotation marks omitted)).

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or, in the alternative stay, is DENIED.